UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GEOFFREY TYSON, M.D.,

                                      Civil No. 03-1192-HA

              Plaintiff,               OPINION AND ORDER

        v.

OREGON ANESTHESIOLOGY GROUP, P.C.;
LEGACY PORTLAND HOSPITALS MEDICAL
 STAFF; et al.,

              Defendants.

_____

HAGGERTY, Chief Judge:

     This litigation has presented complex matters, and has been subjected to extensive and

sensitive briefing.  In light of the parties' exhaustive filings, this court has taken the entire scope

of the pending litigation under advisement without further oral argument, and by this Opinion

and Order issues comprehensive rulings regarding all pending matters.

**RELEVANT PROCEDURAL HISTORY**

Plaintiff's initial Complaint claimed that defendant Oregon Anesthesiology Group, P.C., (OAG) unlawfully terminated his employment. After this court denied OAG's Motion to Dismiss or in the Alternative to Compel Arbitration, plaintiff filed a First Amended Complaint in which he also joined three additional parties as co-defendants – Legacy Portland Hospitals Medical Staff, Legacy Emanuel Hospital & Health Center, and Legacy Health System (collectively, the Legacy defendants, or Legacy). Plaintiff's First Amended Complaint asserts that defendants OAG and Legacy unlawfully terminated his employment based on his disability in violation of the Americans with Disabilities Act (ADA) and Oregon's equivalent state statute. *See generally* 42 U.S.C. § 12112 and O.R.S. 659A.112.

Plaintiff alleged in his First Amended Complaint that Legacy wrongfully denied hospital privileges to plaintiff. Pursuant to these claims, plaintiff filed a Motion to Compel discovery from the Legacy defendants regarding documents and information related to his application for medical staff membership and clinical privileges, as well as documents and information related to the applications of other physicians. This court denied the Motion to Compel without prejudice and with leave to renew, pending resolution of the question of whether plaintiff had brought actionable claims against the Legacy defendants. *See* Order issued July 26, 2005 [83].

In the July 26, 2005 Order, Legacy was authorized to present its defenses in the form of a motion dismissing plaintiff's claims on grounds that (1) Legacy was never plaintiff's employer; (2) plaintiff's application at issue cannot be fairly described as "denied" or fully completed; (3) plaintiff's claims against Legacy are precluded by plaintiff's prior promises to not sue Legacy and to pursue administrative remedies when challenging a decision about his application; and (4) plaintiff agreed to maintain confidentiality in his application process. *Id*. at 5-6.

Legacy subsequently filed a Motion to Dismiss [84] in attempted compliance with the July 26, 2005 Order. Legacy filed documents in support of its Motion to Dismiss, including a Concise Statement of Material Facts and various Declarations.

While this court had endeavored to determine whether plaintiff's claims against Legacy were colorable without exposing the parties and others to invasive discovery, Legacy's motion practice demonstrated that some factual determinations were unavoidable in evaluating plaintiff's claims against Legacy. Accordingly, plaintiff was permitted to conduct discovery that pertained to resolving the defense issues noted above (*i.e.*, whether (1) Legacy was plaintiff's employer; (2) plaintiff's application at issue was ever "denied" or fully completed; (3) plaintiff's claims against Legacy are precluded by plaintiff's prior agreement to pursue administrative remedies when challenging a decision about his application; and (4) plaintiff agreed to maintain confidentiality in his application process, and if so, how this affects the merits of plaintiff's claims against Legacy).

The parties subsequently encountered repeated discovery disputes, particularly because the scope and nature of this discovery gave rise to possible disclosures of sensitive information. Therefore, the court attempted to provide preemptive guidelines and limitations regarding the production of sensitive information. *See* Order issued January 20, 2006 [142] and Order issued January 31, 2006 [146]. Nevertheless, the propriety of much of the discovery being sought continued to be litigated zealously – and bitterly, at times – by the parties. Some disputes were addressed when this court granted plaintiff's subsequent motion seeking clarification. *See* Order issued March 27, 2006 [167]. Other matters remain in dispute and are resolved by this Opinion and Order.

Within days of the court's January 31, 2006 Order, plaintiff also moved for leave to file a Second Amended Complaint. Defendants objected to that motion, and this court elected to

resolve the matter after obtaining the benefit of the complete briefing addressing the issues identified above regarding the merits of plaintiff's underlying claims against Legacy. For reasons provided herein, plaintiff's Motion for Leave to File a Second Amended Complaint [147] is denied.

Other pending matters related to the parties' dispositive motions and briefing include plaintiff's Motions to Compel [177 (seeking privileged materials) and 188 (seeking further deposition testimony from Dr. Franklin Wong)], which are ruled upon herein; his Motion for Leave to File Reply Memorandum in Support of Motion to Compel [191], which is denied, and his Motion to File a Response to Defendant's New Evidence [241], which is denied. Additionally, Legacy's Motion for a Protective Order [184] and Motion to Strike Portions of Evidence Offered by Plaintiff in Support of Memorandum in Opposition to Motion for Summary Judgment [226], are, in light of the other rulings herein, denied as moot.

## SUMMARY OF FACTUAL BACKGROUND

Defendant OAG is a professional corporation engaged in the business of providing anesthesiology services. Plaintiff was employed as a Clinical Anesthesiologist at six hospitals for OAG, including Emmanuel Hospital in Portland, Oregon, one of Legacy's hospitals.

In February 2000, plaintiff sought treatment for chemical dependency disorders. Defendant OAG placed plaintiff on medical leave. Defendant Legacy also placed plaintiff on leave the following month, and advised plaintiff that he would have to successfully seek reinstatement before being permitted to practice at Legacy hospitals again.

Plaintiff applied for reinstatement with Legacy in June 2001.

In May 2002, defendant OAG requested plaintiff's resignation, explaining that it could no longer extend his medical leave. Plaintiff refused to resign. In August 2002, OAG terminated plaintiff, citing in part plaintiff's failure to obtain Legacy's reinstatement.

Plaintiff alleges that Legacy unfairly required that additional conditions be met for reinstatement after OAG terminated plaintiff. Plaintiff alleges that he requested reasonable accommodation from Legacy for his chemical dependency, and alleges that Legacy refused to provide that accommodation.

Plaintiff's First Amended Complaint asserts that defendants OAG and Legacy unlawfully terminated his employment based on his disability. Plaintiff summarized his position regarding the Legacy defendants succinctly as follows: "in this case, plaintiff has established that Legacy's actions caused plaintiff to be denied a position in the Legacy Pain Clinic and then to lose his employment with OAG." Pl.'s Mem. In Opp. to Summ. J. at 21.

As noted above, this court ordered the parties to litigate whether: (1) Legacy could be construed as plaintiff's employer; (2) plaintiff's application at issue was ever "denied" or fully completed; (3) plaintiff's claims against Legacy are precluded by plaintiff's prior promise not to sue and his agreement to pursue administrative remedies when challenging a decision about his application; and (4) whether plaintiff agreed to maintain confidentiality in his application process. Additionally, as noted above, these parties have litigated various issues that are related to plaintiff's claims against Legacy generally: discovery disputes, plaintiff's request for leave to file a Second Amended Complaint, and plaintiff's dispositive motions.

**<u>ANALYSIS</u>**

1.    **Plaintiff's Motion For Leave to file a Second Amended Complaint**

As a preliminary matter, this court must resolve plaintiff's motion seeking leave to file a Second Amended Complaint.  For the following reasons, this motion is denied.

This case was initiated by plaintiff, against OAG, on September 4, 2003.  Eleven months later, plaintiff sought leave to amend his Complaint.  This motion was granted shortly thereafter the motion was filed, on September 8, 2004.  Plaintiff filed a First Amended Complaint the next day that added Legacy Health System, Legacy Emanuel Hospital & Health Center and Legacy Portland Medical Staff as defendants.  As is established above, this amendment triggered extensive, complex litigation attempting to ascertain the propriety of plaintiff's claims against the Legacy defendants.  The legal challenges and discovery disputes that ensued for over nine months after the Amended Complaint was filed resulted in extraordinary measures taken by this court to evaluate those claims and to limit or tailor the breadth of discovery allowed in light of the highly sensitive matters put at issue.  These measures included an attempt by this court to direct the parties to address explicitly the possible merits of plaintiff's claims against Legacy, and Legacy's defenses to those claims.  *See* July 26, 2005 Order.

The parties' subsequent conduct included limited or insufficient cooperation among counsel, multiple motions to strike, multiple requests for extensions, and supplemental memoranda and sur-replies.  This compelled the court to conduct a protracted telephonic conference with counsel in early 2006.  That conference resulted in a detailed eight-page Order that instructed the parties regarding the appropriate scope of discovery and briefing for issues pending in the case, and included the scheduling of a second telephonic conference.  *See* January 20, 2006 Order.

PAGE 6 - OPINION AND ORDER

At the second conference, issues in dispute were further clarified, a comprehensive, extended briefing schedule for resolving those issues was set, and matters pertaining to discovery and depositions were addressed. *See* January 31, 2006 Order.

Within one week of that Order, plaintiff moved formally for further clarification of these matters. That motion resulted in extensions, additional briefing, a third telephonic conference related to discovery issues, and another Order attempting to facilitate adjudication of the propriety of plaintiff's claims against Legacy. *See* Order issued March 27, 2006 [167].

Within five days of moving for clarification, plaintiff also filed his Motion for Leave to File a Second Amended Complaint [147], desiring to add new causes of action, including a claim for interference in his employment under the ADA, and new state and federal claims for discrimination in public accommodations. There is no dispute that these claims arise under the same allegations advanced by plaintiff in his First Amended Complaint filed on September 9, 2004 (nearly seventeen months earlier). No plausible, acceptable explanation for plaintiff's delay in seeking to add these claims is presented.

Amendment of a Complaint is governed by Fed. R. Civ. P. 15 which provides, in part:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Federal policy favors determination of cases on their merits. Therefore, the role of pleadings is limited, and leave to amend should be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The party seeking leave to amend need only demonstrate to the court why amendment is required.

However, whether to grant or deny a motion to amend pleadings is a matter of the court's discretion. *Sweaney v. Ada County*, 119 F.3d 1385, 1392 (9th Cir. 1997). While Rule 15(a) should be interpreted with "extreme liberality," leave to amend is not to be granted automatically. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). Once scheduling orders have been established in a case, there are more restrictive provisions regarding amendments that require a showing of good cause for failing to amend prior to the deadlines previously set that apply. *Coleman v. Quaker Oats*, 232 F.3d 1271, 1272 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Various factors that may justify denial of leave to amend are: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) repeated failure to cure deficiencies by previous amendment. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citation omitted). Although no single factor is dispositive, prejudice to the opposing party often has been deemed to be a key factor in considering a motion to amend. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971); *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 926 F.2d 1502, 1511-12 (9th Cir. 1991); *see also Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999) (liberality in granting a plaintiff leave to amend "is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile").

The discretion to deny leave to amend is particularly broad where – as here – the court has granted the plaintiff an opportunity to amend a complaint previously. *Fidelity Fin. Corp. v. Fed. Home Loan Bank*, 792 F.2d 1432, 1438 (9th Cir. 1986) (citation omitted).

There can be no rational dispute that plaintiff's proposed amendments have been offered following extensive and complex efforts to identify and evaluate the possible merits of plaintiff's prior allegations against Legacy.  The motion to amend, when filed, sought to add new claims against Legacy twenty-nine months after this case was initiated, seventeen months after plaintiff was allowed to add the Legacy defendants, and in the wake of expansive efforts undertaken by the court and the parties to identify, frame, and evaluate plaintiff's existing claims against Legacy.  Such amendments would inflict a significant, undue burden upon Legacy. Pragmatically, the request for such leave also bears the appearance of an attempt to evade the careful evaluation of existing claims that is now possible following the parties' painstaking and thorough briefing.

This court concludes that there has been unjustified, undue delay in presenting the proposed amendments.  Moreover, the proposed new claims are grounded in facts that were known to plaintiff at least at the time the First Amended Complaint was filed, and possibly earlier.  A court may deny motions to amend if unfair delay would result, especially in cases in which the party seeking amendment knew or should have known the facts upon which the proposed amendment is based but failed to include them in prior filings.  *De Saracho v. Custom Food Machinery, Inc*., 206 F.3d 874, 878 (9th Cir. 2000) (citations and internal quotations omitted).

Allowing such amendments would inflict unfair prejudice upon the Legacy defendants. To allow plaintiff to alter the nature and scope of his allegations against Legacy at this stage in this litigation would be unfair, could result in an evasion of extensively researched and carefully

PAGE 9 - OPINION AND ORDER

briefed dispositive motions, and would cause the parties to incur even greater expense and delays than have already been endured.

Finally, the resolution of this motion has been stayed by the court pending an opportunity to evaluate the possible merits – or futility – of plaintiff's asserted claims, as well as plaintiff's proposed new claims. For reasons further detailed herein, the futility of the amendments provide independent grounds for denying leave to amend.

### 2.    Dispositive Grounds

Other pending discovery-related motions pertain to matters that are addressed best in the light of a comprehensive evaluation of the grounds for dismissing plaintiff's claims against Legacy as presented by Legacy and briefed thoroughly by the parties. The resolution of the dispositive arguments is determinative of most of those ancillary matters. This court concludes that several of the dispositive grounds presented provide valid, independent reasons for dismissing plaintiff's claims against the Legacy defendants.

### A.    Applicable standards

Legacy's dispositive motion [84] is construed as a summary judgment motion. A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial

burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party does have limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986).

Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

The ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability and, in some cases, against persons perceived to be disabled. Specifically, it provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."  42

U.S.C. 12112(a); *see also* § 12111(2).

The Ninth Circuit analyzes ADA cases using the framework articulated in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44,

50 (2003).  As set out under *McDonnell Douglas*, a plaintiff must first establish a *prima facie*

case of discrimination.  To prevail on an ADA claim of unlawful discharge, a plaintiff must

establish a *prima facie* case by showing that: (1) he or she is a disabled person within the

meaning of the statute; (2) he or she is a qualified individual with a disability; and (3) he or she

suffered an adverse employment action because of the disability.  *Hutton v. Elf Atochem N. Am.,*

*Inc.*, 273 F.3d 884, 891 (9th Cir. 2001) (citations omitted).

The requisite degree of proof necessary to establish a *prima facie* case of discrimination

on summary judgment "is minimal and does not even need to rise to the level of a preponderance

of the evidence."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Oregon's Discrimination Against Disabled Persons in Employment Act (the Oregon Act)

is in part modeled after the ADA and contains language that is similar to the ADA.  *Wheeler v.*

*Marathon Printing, Inc.*, 974 P.2d 207, 213 n.6  (Or. App. 1998).  The Oregon Act provides that

"O.R.S. 659A.112 to 659A.139 shall be construed to the extent possible in a manner that is

consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as

amended."  O.R.S. 659A.139.  The Oregon Act tracks the ADA and defines "disability" in an

identical manner.  O.R.S. 659A.100; *see also Centennial Sch. Dist. No. 28J v. Or. Bureau of*

*Labor and Indus.*, 10 P.3d 945, 953 (Or. App. 2000) (applying federal jurisprudence interpreting

ADA definition of "disability" to the Oregon Act).

      **B.**     **Plaintiff's claims against Legacy are precluded by plaintiff's prior valid, binding agreement to waive claims against Legacy and pursue administrative remedies when challenging a decision by Legacy about his application, and his promise to keep his application confidential**

Legacy is entitled to dismissal of all of plaintiff's asserted and proposed claims against Legacy because plaintiff expressly promised to be bound by Legacy's applicable Credentials Policy (Credentials Policy or Policy) and to release all liability and waive all legal claims and exhaust all appeal procedures contained in that Policy, which is valid and enforceable.

There is no dispute that in his application for privileges from Legacy, plaintiff executed a "release" of all potential claims against Legacy, granted immunity to Legacy, and covenanted not to sue Legacy. Pursuant to § 2.B.2(x) of the Policy plaintiff promised not to sue regarding any matter pertaining to the application process. Defts. Concise Statement of Facts, ¶ 13, attached as Ex. 5 to Aff. of Jennifer K.T. Warner. Pursuant to ¶ 5 of the authorization signed by plaintiff and §§ 2.B.2(y) and 2.B.4(a) of the Policy, plaintiff agreed to release Legacy from any liability and to extend absolute immunity to Legacy for all matters related to the consideration of his application. *Id.*

"Inherent in the purpose of a release agreement is a promise to abandon a claim or right that is within the contemplation of the parties." *Patterson v. Am. Med. Sys.*, 916 P.2d 881, 882 (Or. App. 1996). If a release's terms "unambiguously express the intent of the parties, [the release] must be enforced accordingly." *Id.*

Releases and settlements are favored by the law, are not rendered unenforceable by ordinary or negligent mistakes, and if "untainted by unconscionable conduct," will not be voided even if they could be construed as improvident. *Maier v. Pac. Heritage Homes, Inc.*, 72 F. Supp.

2d 1184, 1191 (D. Or. 1999) (quoting *Walcutt v. Inform Graphics, Inc.*, 817 P.2d 1353, 1355 (Or. App. 1991)).

Plaintiff's release of claims against Legacy is valid. This court is persuaded by the reasoning expressed by the Fourth Circuit for the United States Court of Appeals in *De Leon v. Saint Joseph Hosp., Inc.*, 871 F.2d 1229 (4th Cir. 1987). There, the court recognized that a physician who had released the hospital to which he had applied for privileges from liability for all acts performed in connection with his application was barred from suing the hospital after it denied him "admitting privileges." *Id.* at 1234. The court cited the plaintiff's lack of evidence regarding bad faith on the part of the hospital as the basis for enforcing the release and for rejecting each of the plaintiff's claims. *Id.*

The same is true here. As part of his application process, plaintiff agreed to waive all legal claims against Legacy. Plaintiff's most plausible attempts to evade the consequences of his express waivers and promises rely upon a finding of an employment relationship between plaintiff and Legacy. For reasons provided below, no such relationship was created and none exists.

First, plaintiff refers to certain exceptions to the immunity provided to participants in a professional review body pursuant to the Health Care Quality Improvement Act (HCQIA), 42 U.S.C. § 11111, *et seq.* There is no dispute that the statute provides some exceptions to the immunity granted to review boards that pertain to statutory civil rights allegations. 42 U.S.C. § 11111(a). Plaintiff's claims against Legacy arise under the ADA, which is not referenced by the HCQIA and which requires, at minimum, the existence of an employment relationship before an actionable claim can be asserted. Moreover, the immunity at issue in this case is the immunity

PAGE 14 - OPINION AND ORDER

plaintiff promised explicitly to grant to Legacy from any suits plaintiff might pursue, not the immunity recognized by the HCQIA.

Plaintiff's related arguments that there should be exceptions imposed judicially upon the promise of immunity he granted to Legacy for "statutory," "civil rights" claims also fails, under both federal and state law. Plaintiff's proposed authorities to the contrary involve liability releases made by *employees* to *employers*. Plaintiff notes correctly that the Ninth Circuit has recognized that permitting waivers of Title VII rights through covenants in employment contracts "would undermine Title VII's policy of eradicating discrimination in employment." *E.E.O.C. v. Townley Engineering & Mfg. Co.*, 859 F.2d 610, 617 (9th Cir. 1988). While this may be true, such reasoning is inapplicable here, given the absence of an employment contract at issue and the existence of agreed-upon liability waivers and covenants not to sue in policy statements and non-employment application contracts.

Plaintiff's contentions regarding applicable state law are unavailing as well. In *Farina v. Mt. Bachelor, Inc.*, the court analyzed Oregon law and held that because a ski facility "made an unenforceable bargain in trying to escape liability for gross negligence and willful misconduct, the entire release provision" in a season pass application, including the limitation of liability for ordinary negligence, was unenforceable. 66 F.3d 233, 236 (9th Cir. 1995). Here there are no allegations of gross negligence and willful misconduct, no evidence of, or attempts by Legacy to escape liability for, gross negligence and willful misconduct, and no evidence of even "unlawful employment practices under O.R.S. 659A.112," as alleged by plaintiff. Pl.'s Mem. In Opp. to Summ. J. at 42. Plaintiff's release is applicable and enforceable.

PAGE 15 - OPINION AND ORDER

Relatedly, plaintiff also agreed to terms in the applicable Credentials Policy that required the application process to be kept in "strict confidence" and mandated that "no party shall disclose [application] information to any third party without the express written consent of the others." Credentials Policy § 2J, attached as Ex. O to the Aff. of Stephen L. Brischetto in Opp. to Summ. J. Mot., p.6 (Credentials Policy). Moreover, all communications and actions taken pursuant to the Policy were deemed covered by provisions of O.R.S. § 41.675 "or the corresponding provisions of any subsequent federal or state statute providing protection to peer review or related activities." Credentials Policy § 2K, p.7. Accordingly, the parties chose to be bound to provisions that all "data[1] shall be privileged and shall not be admissible in evidence in any judicial, administrative, arbitration or mediation proceeding." O.R.S. § 41.675(3).

Plaintiff suggests that these provisions should be construed as ambiguous because it is unclear whether the phrase "no party shall disclose [application] information to any third party," Credentials Policy, §2J, should be construed to include the applicant within its scope. Pl.'s Mem. in Opp. Summ. J. Mot. at 45. Plaintiff also suggests that the confidentiality requirement logically applies only to the hospital, and that "it makes no sense to suggest that an applicant for credentials is a 'party' with an obligation not to disclose information gathered by the hospitals[.]" *Id*.

This court concludes that the plain language of the terms agreed to by these parties establishes that the prohibition against any party disclosing application information included the applicant, plaintiff. By the terms of Policy to which plaintiff agreed, *no party* was permitted to

_____

[1]As used in this subsection, "data" is defined as "all oral communications or written reports to a peer review body, and all notes or records created by or at the direction of a peer review body, including the communications, reports, notes or records created in the course of an investigation undertaken at the direction of a peer review body." O.R.S. § 41.675 (2).

disclose information without first obtaining the consent of the other parties, and the scope of the data at issue included *all* communications, notes and records gathered in the course of the application.  Plaintiff's attempts to exclude himself from this unambiguous scope is specious. His promises to maintain confidentiality in his application process and his acknowledgments that all oral communications or written reports, and all notes or records created pursuant to his credentials application, are inadmissible in evidence in any judicial proceeding, are binding.

### C.     Legacy was never plaintiff's employer

Even assuming that plaintiff's waiver of claims against Legacy and his confidentiality agreements were somehow unenforceable, plaintiff's asserted and proposed claims would nevertheless fail for several independent grounds.  One such ground is that an employment relationship between plaintiff and Legacy has never existed.

The ADA was created to protect *employment* rights of the disabled.  *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment").  While the ADA protects employees, it does not protect non-employees, such as independent contractors.  *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) ("Title VII protects employees, but does not protect independent contractors") (citations omitted).  Because Congress enacted Title VII in part to "achieve equality of employment opportunities," the Ninth Circuit has recognized that a party seeking Title VII protections must enjoy "some connection with an employment relationship" with the

party against whom those protections are being sought. *Id.* (internal quotations and citations omitted).

The Oregon Act relied upon by plaintiff for his claims against Legacy recognizes similar employment status prerequisites. *See, e.g., Cantua v. Creager*, 7 P.3d 693, 700 (Or. App. 2000) (hostile-work-environment sexual harassment and constructive wrongful discharge claims require a plaintiff to prove status as an employee).

Legacy denies being plaintiff's "employer" for purposes of litigating plaintiff's allegations regarding the degrees of Legacy's compliance with the ADA. For purposes of evaluating this issue, this court accepts the following factual assertions as accurate. To the extent that these assertions are challenged by any aspects of evidentiary objections or motions, those aspects of the objections are overruled and the motions denied.

First, plaintiff's relationship with Legacy, for the purposes of this litigation, was formed when plaintiff submitted his Oregon Practitioner Credentialing Application (Credentialing Application or Application) seeking staff membership and clinical privileges with Legacy in June 2001. Every page of that application bears an explicit disclaimer that the document is not an employment application. Plaintiff's employment with defendant OAG ended in August 2002 and he never returned to work for OAG. Plaintiff also represented to an insurance entity in 2003 that if his Credentialing Application were successful, he would *not* obtain employee status with Legacy. *See* Newly Received Dispositive Adm. From Pl. Offered in Supp. of Legacy Defts. Mot. for Summ. J. and Supp. Aff. of Jennifer K.T. Warner ("I will not be an employee or

independent contractor with the hospital.  I will be a physician on staff with privileges in Pain Medicine.").[2]

Plaintiff's representation to the insurance company was correct.  The United States Court of Appeals for the Eighth Circuit concluded recently that a doctor who "performed highly skilled surgical work, leased his own office space, scheduled his operating room time, employed and paid his own staff, billed his patients directly, did not receive any social security or other benefits" from the hospital with which he enjoyed staff privileges was viewed properly as an independent contractor and not an employee.  *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006).  Such reasoning is in accord with decisions from other circuits.

The Sixth Circuit has recognized that a surgeon holding surgical privileges could not be construed as an employee of the hospital offering privileges and was precluded from bringing suit under either the Age Discrimination in Employment Act (ADEA) or Title VII.  *See Shah v. Deaconess Hosp.*, 355 F.3d 496, 500 (6th Cir. 2004).  The Seventh Circuit reached a similar conclusion, ruling that an anesthesiologist whose staff privileges were terminated lacked status as a hospital employee and was therefore barred from suing under either the ADEA or Title VII. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 805-06 (7th Cir. 1999); *see also Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996) (physician was an independent contractor and thus could not sue hospital under Title VII); *Diggs v. Harris Hosp.-Methodist,*

---

[2]As noted previously, plaintiff's Motion to File a Response to Defendant's New Evidence [241], which pertained to this statement, is denied.  The quoted statement was made in a letter to Physician's Insurance Company dated June 9, 2003, which plaintiff first produced to Legacy on August 2, 2006 after inexplicably failing to produce the letter in response to discovery requests presented many months earlier.  Allegations that Legacy has unfairly advanced new or different arguments, and all other challenges to the use of this belatedly disclosed evidence, are rejected.

*Inc.*, 847 F.2d 270, 272-73 (5th Cir. 1988) (physician with staff privileges is not an employee and thus cannot bring claim under Title VII).

Accordingly, as he acknowledged, plaintiff would not have been an employee of Legacy even had his Credentialing Application been successful. Therefore, whatever arrangement that existed between plaintiff and Legacy in the wake of plaintiff's attempt to gain staff privileges and his subsequent failure to complete his Application can in no way be construed as an employment relationship.

Plaintiff's suggestion that his claims might survive because Legacy could be construed as a "joint" employer in some fashion, or somehow "intertwined" or involved as an indirect employer with OAG is also rejected. Plaintiff's employment relationship with OAG ended in August 2002. The longest applicable statute of limitations period for any of plaintiff's claims against Legacy is one year, pertaining to plaintiff's state law disability claims. The statute of limitations periods for plaintiff's federal claims is shorter. *See* 42 U.S.C. § 2000e-5. Plaintiff first asserted claims against Legacy nearly two years after plaintiff's only plausibly applicable employment relationship ended. Any theories plaintiff might advance regarding Legacy's possible involvement with OAG as a joint or indirect employer must fail as time-barred.

Moreover, such theories fail on the alternative grounds that they lack merit. As established above, Legacy was not and would not be plaintiff's employer even if plaintiff presented a successful Credentialing Application. Similar reasoning precludes a finding that Legacy could be construed as a joint employer. Even assuming that plaintiff's relationship with OAG could permit timely claims against Legacy, there is no evidence that Legacy's potential

PAGE 20 - OPINION AND ORDER

influence through plaintiff's relationship with OAG would allow Legacy to exercise control over plaintiff sufficient to enable Legacy to be construed as an employer.

Plaintiff's related theory that Legacy enjoyed an intertwined relationship with OAG and "partnered" or conspired with OAG to obstruct plaintiff's employment is also rejected on multiple grounds. Such claims are time-barred. Even if timely, such claims are unsupported by sufficient evidence of an actual joint employer relationship. In so concluding, the court has taken into consideration the statements of Dr. Carl Balog, a former OAG employee, and other evidence that is the subject of Legacy's Motion to Strike Portions of Evidence Offered by Plaintiff in Support of Memorandum in Opposition to Motion for Summary Judgment [226]. Because plaintiff's theories in this regard are rejected on multiple grounds even after consideration of plaintiff's challenged evidence, Legacy's Motion to Strike is denied as moot.

Similarly, plaintiff's attempt to characterize Legacy as an indirect employer fails on multiple grounds. Any claim arising from this premise is time-barred. Moreover, this theory is articulated in plaintiff's proposed Second Amended Complaint, for which this court has denied plaintiff leave to file. Finally, this court concludes that such a claim lacks merit and would be futile even if properly before the court. Plaintiff's employment relationship with OAG ended permanently in August 2002. Despite plaintiff's allegations that Legacy "caused" plaintiff to lose his employment with OAG, Pl.'s Mem. In Opp. to Summ. J. at 21, and plaintiff's reliance upon testimony from OAG personnel that another physician was selected to work at OAG, there is insufficient evidence to support plaintiff's theories of liability. There is no evidence that Legacy would have had any direct control over plaintiff's daily medical practice, or paid a salary or any

benefits to plaintiff, or oversee his practice, patients or treatment plans.  *Wojewski*, 450 F.3d at

344.

> ### D.    Plaintiff's Credentialing Application was never "denied" by Legacy nor fully completed by plaintiff

All of plaintiff's asserted and proposed claims against Legacy under the ADA, the

Rehabilitation Act, and Oregon statutes require plaintiff to demonstrate that an adverse action

was imposed upon him because of his disability or because he was perceived to be disabled.

Because plaintiff cannot meet this requirement, his asserted and proposed claims against Legacy

are futile.  Accordingly, Legacy is also entitled to summary dismissal of plaintiff's claims against

it on the independent grounds that plaintiff failed to complete his application for credentials,

despite Legacy's willingness to accommodate plaintiff's dilatory and ineffectual application

efforts.

There is no dispute that physicians seeking privileges at Legacy (referred to as

applicants) must meet a number of requirements.  They must produce proof of having secured

professional liability insurance coverage while caring for patients at Legacy.  They must

maintain a primary office in proximity to a Legacy hospital to ensure continuous care for

patients.  They must identify other physicians who have agreed to provide care (on call) in the

event that the applicant is absent.  In addition, applicants who are known drug abusers must

disclose any practicing restrictions placed upon them.  In this case, plaintiff faced restrictions

from both the state of Washington and Oregon, and was required to provide compliance plans to

Legacy regarding those restrictions.

After initiating an application in June 2001, plaintiff allowed his application to languish

in non-compliance for a total of thirty months, despite repeated, clear instructions and requests

from Legacy seeking basic threshold information.  Specifically, plaintiff lacked a primary office, had no on-call assistance and no objectively unambiguous proof of active insurance when he first applied to Legacy while on a "leave of absence" from OAG.

One year later, plaintiff attempted to continue his application process.  Legacy responded promptly to plaintiff's efforts and inquired about his status with OAG.  Two months later, plaintiff explained that his delays in providing any information to Legacy stemmed from his uncertain employment status with OAG, but that he had received notice recently that OAG had terminated him.  Defts. Supplemental Concise Statement of Material Facts, ¶ 6; Tab 44 to Aff. of Jennifer K.T. Warner.

In January 2003, Legacy requested that plaintiff fulfill his obligation to provide updated information in support of his initial application.  Defts. Supplemental Concise Statement of Material Facts, ¶ 7; Tab 57 to the Affidavit of Jennifer K.T. Warner.  Plaintiff and Legacy communicated during 2003.  On October 10, 2003, Legacy advised plaintiff that his application still lacked information about a primary office location, on-call physicians, drug abuser restrictions, and malpractice insurance coverage.  Defts. Supplemental Concise Statement of Material Facts, ¶ 10; Tab 81 to Aff. of Jennifer K.T. Warner.

On November 13, 2003, Legacy advised plaintiff that his application still lacked necessary information and detailed for plaintiff his remaining application obligations: lease documentation of primary office space, identification of on-call physicians, compliance plans regarding the restrictions imposed upon his practice, and verification of malpractice insurance coverage.  After waiting since June 2001 for this information, Legacy notified plaintiff that this

PAGE 23 - OPINION AND ORDER

information had to be produced within thirty days of his receipt of the notice or Legacy would be compelled to construe his incomplete application as withdrawn.

In late December 2003, having received no legitimate verification of malpractice coverage and no plans for complying with Washington's and Oregon's restrictions on his practice, Legacy was in fact compelled to conclude the obvious – that plaintiff's application remained incomplete and should be deemed withdrawn. Defs. Supplemental Concise Statement of Material Facts, ¶ 12.

Legacy did not take adverse action against plaintiff. Plaintiff's failures to meet the threshold application requirements necessary before advancing his application – despite repeated notices from Legacy about his obligations – resulted in adverse consequences for plaintiff. That is not tantamount to Legacy inflicting an adverse action upon plaintiff. Plaintiff relies upon myriad allegations that Legacy and OAG acted, individually and jointly, in ways to doom plaintiff's application for credentials. *See generally* Pl.'s Mem. In Opp. to Summ. J. at 26 ("both Legacy and OAG participated in delaying plaintiff's credentials application, both Legacy and OAG participated in the decision to deny plaintiff's placement at the Pain Clinic, and . . . OAG terminated plaintiff in part because of Legacy's failure to act on plaintiff's credentials application"). However, the evidence presented establishes beyond reasonable factual dispute that after initiating an application for privileges from Legacy in June 2001, plaintiff never met or complied with Legacy's standard threshold requirements for such applications. The application states plainly that the responsibility for providing a complete application rests with the applicant. The Initial Application Summary, a document plaintiff acknowledges receiving, states that the applicant bears the burden of providing all requested information, and that failing to do so will

result in the application being deemed withdrawn.  Legacy Defts. Supp. Concise Statement of

Material Facts, ¶ 3.

Moreover, plaintiff signed an Authorization and Release that acknowledged that he had

the responsibility to produce "adequate information for proper evaluation" of his qualifications.

*Id*.; *see also* Defts. Concise Statement of Facts, ¶ 6.  Plaintiff's efforts to shift his ultimate

responsibility for presenting a complete application, providing updated information, and

ensuring that Legacy possessed sufficient information to make a determination regarding his

application fail to create triable issues of fact that preclude judgment for Legacy.

### 3.    Other Pending Matters

Although most of the pending motions are addressed and resolved within the scope of the

reasoning provided above, this court acknowledges expressly here that it has considered the

arguments regarding plaintiff's Motions to Compel.  Plaintiff requested an opportunity to access

privileged materials [177] and to compel further deposition testimony from Dr. Franklin Wong

[188].  Neither motion is meritorious.

The court notes at the outset of this analysis that, as established above, plaintiff's

underlying claims against Legacy are futile for several reasons.  One reason in particular is

plaintiff's contractual waiver of any claims against Legacy, which is valid and enforceable.  The

potential scope of the additional evidence sought by these motions  provides no suggestion that

the validity of that waiver could be challenged successfully.  There is no rational allegation of,

nor any basis supporting, a claim that Legacy acted unlawfully or in bad faith to a degree that

plaintiff's waiver could be invalidated.  There is no indication or reason to believe that allowing

further testimony from Dr. Wong would affect this conclusion, either.

PAGE 25 - OPINION AND ORDER

Moreover, even if plaintiff's claims were not barred by his prior waivers, these motions would fail. Because of the highly sensitive matters in this litigation, this court expressly limited discovery to information probative of and related to the threshold issues the parties were charged with briefing. *See* Order issued March 27, 2006 (limiting permissible discovery to documents concerning credentials or staff privileges for plaintiff; documents pertaining to Legacy's claim that plaintiff's application was incomplete; interrogatory answers to inquiries as to whether plaintiff's application was denied or deemed withdrawn; and interrogatory answers to the request for the identities of every person who participated in the decision regarding plaintiff's application).

Included within these limitations was information pertaining to written or unwritten policies regarding impairments, whether such policies apply to staff physicians only or also to applicants, whether such policies might constitute evidence of efforts by Legacy to control the means and manner of physicians' performances, and whether such policies were considered or invoked during plaintiff's application process. *Id*. Counsel were reminded explicitly that discovery pertaining to other applicants and other physicians was prohibited. *Id*.

Plaintiff's subsequent motion [177] seeking access to, or this court's *in camera* review of, material that Legacy has evaluated and included in a detailed privilege log is without merit. Specifically, plaintiff complains that the "privilege log does not provide a sufficient description of each document/communication withheld for plaintiff's counsel to determine the existence of a privielge." Pl.'s Mem. In Supp. of Mot. Comp. Discovery from Legacy Defts. at 2. Plaintiff challenges certain communications that were sent to multiple parties, including attorneys. These communications appear to be between Ms. Brydolf, Legacy's in-house counsel, and Legacy's

PAGE 26 - OPINION AND ORDER

administrative or medical staff regarding potential legal issues related to plaintiffs application. Those communications were properly disclosed in Legacy's privilege log.

Plaintiff raises a similar challenge to various entries on Legacy's privilege log that refer to communications between Legacy's staff regarding communications with counsel.  Legacy produced two of these challenged entries, and plaintiff invokes the attorney-client privilege for the remaining communications.  This privilege applies to situations in which legal advice is sought from a professional legal adviser, including related communications.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992) (citation omitted).

Plaintiff's other challenges are directed at an e-mail exchange that Ms. Brydolf was copied on and responded to, including the substance of her response, drafts of documents prepared with Legacy's inside and outside counsel, draft summaries that were prepared with assistance of counsel and fall within the scopes of the attorney-client privilege and the work product doctrine, and redacted information that was omitted in Legacy's privilege log.  These challenges fail to compel an *in camera* review.

> Although *in camera* review of documents does not destroy the attorney-client privilege, it is an intrusion which must be justified. Some threshold must be met by the party contesting the application of privilege before the court examines the materials.
>
> \* \* \*
>
> To empower the district court to review the disputed materials *in camera*, the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that in camera inspection may reveal evidence that information in the materials is not privileged.  If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court.

*In re Grand Jury Investigation*, 974 F.2d at 1074-75 (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)).

Plaintiff has failed to make this showing.  Even assuming without deciding that an adequate showing had been made, this court would nevertheless decline to exercise the discretion to conduct the review or order production of the discovery being pursued by plaintiff.  Plaintiff's underlying claims against Legacy lack merit on several independent grounds, and plaintiff's expeditions seeking further discovery would trespass upon sensitive communications with counsel and physicians, and delve into sensitive areas pertaining to a demanding, carefully supervised profession.

Plaintiff also filed a motion subsequent to this court's March 27, 2006 Order seeking to obtain additional testimony from Dr. Wong [188].  Doctor Wong was appointed by defendants to testify as Legacy's authorized representative.  Counsel deposed Dr. Wong twice, on April 3, 2006, and on June 19, 2006.  It is beyond reasonable dispute that Dr. Wong provided extensive testimony within the discovery limitations ordered by this court.  In particular, he detailed Legacy's policies regarding impaired physicians and the scope of Legacy's policies regarding impairments and clinical privileges, which apply to Legacy's existing medical staff members and not to applicants seeking medical staff privileges.

Plaintiff contends that this court should order Dr. Wong to answer plaintiff's questions regarding Legacy's "systems office," an entity that may be contacted to assist in identifying personnel who might participate in establishing reasonable accommodations after an application like plaintiff's is completed.  Because plaintiff's application was never completed, Dr. Wong testified that he did not pursue any meetings or move "from step one to step two."  Aff. of

Jennifer K.T. Warner in Supp. of Resp. to Mot. to Comp. ¶ 3, Ex. 1, attaching Wong Depos., Volume 2 at 103:1-25.

Plaintiff's grounds for seeking to compel this specific further testimony from Dr. Wong stray beyond the scope of relevance established by this court and the dispositive challenges to the claims asserted against Legacy and, as such, are unpersuasive.  Accordingly, even assuming without deciding that plaintiff presented valid claims against Legacy, his motion to compel further discovery from Dr. Wong would be denied.

Moreover, in light of the rulings pertaining to the absence of merit in plaintiff's claims against Legacy, plaintiff's Motions filed under Federal Rule of Civil Procedure 56(f) [100 and 238] are denied.

## CONCLUSION

For the reasons provided herein, the Legacy defendants are entitled to summary dismissal of plaintiff's asserted and proposed claims against them.  Accordingly, Legacy's Motion to Dismiss [84] (construed as a summary judgment motion) is GRANTED.  Plaintiff's Motions to Compel [177 (seeking privileged materials) and 188 (seeking further deposition testimony from Dr. Franklin Wong)], Motion for Leave to File Reply Memorandum in Support of Motion to Compel [191], and Motion to File a Response to Defendant's New Evidence [241] are DENIED.  Plaintiff's Motions filed under Federal Rule of Civil Procedure 56(f) [100 and 238] are DENIED.

Legacy's Motion for a Protective Order [184] and Legacy's Motion to Strike Portions of Evidence Offered by Plaintiff in Support of Memorandum in Opposition to Motion for Summary Judgment [226] are DENIED AS MOOT.

PAGE 29 - OPINION AND ORDER

All parties are ordered to confer and file independent status reports identifying remaining issues in this litigation and proposing a final schedule for adjudication of all issues.

IT IS SO ORDERED.

Dated this  13   day of June, 2007.


   /s/ ANCER L. HAGGERTY
ANCER L. HAGGERTY
United States District Judge