UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GEOFFREY TYSON, M.D.,

                Plaintiff,

      v.

OREGON ANESTHESIOLOGY GROUP, P.C.;
LEGACY PORTLAND HOSPITALS MEDICAL
 STAFF; et al.,

                Defendants.

_____

Civil No. 03-1192-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

      This Opinion and Order addresses the remaining pending matters in this complex

litigation. Specifically, this Opinion and Order resolves the motion for summary judgment filed

by Legacy Portland Hospitals Medical Staff, Legacy Emanuel Hospital & Health Center, and

Legacy Health System (collectively, the Legacy defendants, or Legacy) regarding their

counterclaims, the summary judgment motion asserted by co-defendant Oregon Anesthesiology

Group, P.C., (OAG), and the three motions to strike various filings related to OAG's motion.

Oral argument has been deemed unnecessary.

PAGE 1 - OPINION AND ORDER

**SUMMARY OF FACTUAL BACKGROUND**

This litigation has been scrutinized exhaustively and its factual background and procedural history need only be summarized here. Defendant OAG is a professional corporation engaged in the business of providing anesthesiology services. Plaintiff was employed as a Clinical Anesthesiologist at six hospitals for OAG, including Emmanuel Hospital in Portland, Oregon, one of Legacy's hospitals.

In February 2000, plaintiff sought treatment for chemical dependency disorders. Defendant OAG placed plaintiff on medical leave. Defendant Legacy also placed plaintiff on leave the following month, and advised plaintiff that he would have to apply for and obtain reinstatement before being permitted to practice at Legacy hospitals again.

In May 2002, OAG requested plaintiff's resignation after determining that it could no longer continue to extend medical leave to him. Plaintiff refused to resign. In August 2002, OAG terminated plaintiff, citing in part plaintiff's failure to obtain Legacy's reinstatement.

Plaintiff sued, asserting that OAG and Legacy unlawfully terminated his employment based on disability. Plaintiff alleged that Legacy required unfair conditions for reinstatement after OAG terminated plaintiff. Plaintiff also alleged that he requested reasonable accommodation from Legacy for his chemical dependency, but that Legacy refused to provide that accommodation. The parties also litigated various issues that are related to plaintiff's claims against Legacy generally: discovery disputes, plaintiff's request for leave to file a Second Amended Complaint, and plaintiff's dispositive motions.

**RELEVANT PROCEDURAL HISTORY**

Plaintiff's initial Complaint claimed that OAG unlawfully terminated his employment. Plaintiff's First Amended Complaint added the Legacy defendants, and asserted in part that OAG and Legacy unlawfully terminated his employment based on his disability in violation of the

Americans with Disabilities Act (ADA) and Oregon's equivalent state statute. Extensive discovery efforts became necessary. Disputes arose, partly because the scope and nature of this discovery gave rise to possible disclosures of sensitive information.

The parties' subsequent conduct was troubling, including limited or insufficient cooperation among counsel and the filing of multiple motions to strike, multiple requests for extensions, and supplemental memoranda and sur-replies. This compelled the court to schedule multiple telephonic conferences and to issue an Order that instructed the parties on the appropriate scope of discovery and briefing for issues pending in the case. Plaintiff subsequently filed a Motion for Leave to File a Second Amended Complaint, which sought to add new causes of action, including a claim for interference in his employment under the ADA, and new state and federal claims for discrimination in public accommodations. Plaintiff's motion seeking leave to file a Second Amended Complaint was denied because the proposed claims arose under the same allegations advanced by plaintiff in his First Amended Complaint, amendments would inflict unfair prejudice upon the Legacy defendants, and because there was unjustified, undue delay in presenting the proposed amendments.

In addition to denying plaintiff's motion seeking leave to file a Second Amended Complaint, this court also concluded that on the merits, the Legacy defendants were entitled to summary dismissal of plaintiff's asserted claims against them (and would be entitled to judgment as to the proposed amended claims, as well). *See* Opinion and Order of June 13, 2007.

The Legacy defendants subsequently advanced a motion seeking summary judgment on their counterclaims against plaintiff. Additionally, plaintiff and co-defendant OAG agreed upon a supplemental discovery schedule and a briefing schedule for a dispositive motion brought by OAG against plaintiff.

**PENDING MOTIONS**

PAGE 3 - OPINION AND ORDER

Motions now before the court include: the Motion for Summary Judgment by the Legacy Defendants on Their Counterclaims [270]; OAG's Motion for Summary Judgment [287]; Motion to Strike Portions of Declarations Submitted by Plaintiff filed by OAG [307]; plaintiff's Motion to Strike Affidavits Filed With Reply Supporting Motion for Summary Judgment [313], and OAG's Motion to Strike the Affidavit of Stephen L. Brischetto [320].  These motions are addressed in turn.

## SUMMARY JUDGMENT BY LEGACY DEFENDANTS ON COUNTERCLAIMS [270]

The Legacy defendants seek summary judgment on three of their five counterclaims. These allege a breach of plaintiff's covenant not to sue (Counterclaim 1); allege a breach of plaintiff's promise to release and provide absolute immunity to Legacy (Counterclaim 2); and seek indemnity and reasonable attorney fees (Counterclaim 4).  This summary judgment motion is well-taken.

In light of this court's prior analysis, determinations and rulings, it is plain that plaintiff breached enforceable covenants not to sue and promises to release.  There is no rational dispute that in his application for privileges from Legacy, plaintiff executed a release of all potential claims against Legacy, granted immunity to Legacy, and covenanted not to sue Legacy.  Plaintiff expressly promised to be bound by Legacy's valid and enforceable Credentials Policy (Policy) and to release all liability and waive all legal claims and exhaust all appeal procedures contained in that Policy.

Pursuant to § 2.B.2(x) of the Policy, plaintiff promised not to sue regarding any matter pertaining to the application process.  Pursuant to Paragraph 5 of the authorization signed by plaintiff and sections 2.B.2(y) and 2.B.4(a) of the Policy, plaintiff agreed to release Legacy from

any liability and to extend absolute immunity to Legacy for all matters related to the consideration of his application.

"Releases are a species of settlement agreement and, as such, are favored by the law." *Pioneer Resources, LLC v. D.R. Johnson Lumber Co.*, 68 P.3d 233, 242 (Or. App. 2003) (citing *Walcutt v. Inform Graphics, Inc.*, 817 P.2d 1353, 1355 (Or. App. 1991)); *see also Maier v. Pac. Heritage Homes, Inc.*, 72 F. Supp. 2d 1184, 1191 (D. Or. 1999) (releases and settlements are favored by the law, are not rendered unenforceable by ordinary or negligent mistakes, and if untainted by unconscionable conduct will not be voided even if they could be construed as improvident). "Inherent in the purpose of a release agreement is a promise to abandon a claim or right that is within the contemplation of the parties." *Patterson v. Am. Med. Sys. Inc.*, 916 P.2d 881, 882 (Or. App. 1996) (citation omitted). If a release's terms "unambiguously express the intent of the parties, [the release] must be enforced accordingly." *Id.*

Plaintiff's release of claims against Legacy must be upheld as valid. This court examined these issues extensively in its Opinion and Order of June 13, 2007, and now adopts the reasoning and conclusions presented therein. *See* Opinion and Order of June 13, 2007 at 13-22. As part of his application process, plaintiff made enforceable promises agreeing to waive all legal claims against Legacy, and to provide absolute immunity to Legacy. Plaintiff has offered no persuasive basis for deciding otherwise or for waiving or voiding those promises.

Plaintiff's subsequent amendments of his lawsuit to include claims against the Legacy defendants (specifically, the "Legacy Portland Hospitals Medical Staff") were in direct contravention to the earlier, enforceable promises he made to Legacy. The claims plaintiff

asserted in his First Amended Complaint against Legacy involve alleged conduct that occurred while he was an applicant, and plainly breach his prior promises.

Therefore, Legacy is entitled to summary judgment on the "breach" counterclaims. The remaining issue is whether plaintiff's express promise to reimburse Legacy for costs and reasonable fees incurred in defending a legal action such as this should be enforced.

Counsel for Legacy indicate that they will submit a petition for fees and costs after being granted summary judgment on their substantive counterclaims. Plaintiff presents no persuasive argument that Legacy should not be entitled to indemnity in the form of an award of at least some fees and costs. This aspect of defendants' summary judgment motion is granted as follows: the Legacy defendants shall file a Cost Bill and a petition for attorney fees no later than thirty days from the date of this Opinion and Order. Plaintiff shall file any objections  no later than twenty-one days after the Cost Bill and fee petition are docketed. Legacy may file a Reply brief in support of its Cost Bill and fee petition within fourteen days of the filing of plaintiff's Objections. The court will determine the extent of Legacy's award without further briefing or oral argument.

## OAG's MOTION FOR SUMMARY JUDGMENT [287]

Next, this court turns to the summary judgment motion advanced by co-defendant OAG. Because much of the prior motions practice in this litigation involved plaintiff's relationship with Legacy, a brief summary of facts pertaining to plaintiff's history with OAG is appropriate. The court concludes that the following factual summary is supported by the record and is substantively unrefuted.

Plaintiff began working for OAG as a clinical anesthesiologist in May 1998.  In early 2000 plaintiff was confronted about drug abuse by OAG Chief Executive Officer Joy Ketchum. Plaintiff was suspended from his clinical practice and placed on a leave of absence.  Plaintiff entered into drug diversion programs with the Washington Physicians Health Program (WPHP) and Oregon's Diversion Program for Health Professionals (HHP).

Plaintiff was initially terminated by OAG, but on April 20, 2000, his termination was rescinded and he was placed on an indefinite suspension.  On June 2, 2000, plaintiff requested that OAG terminate his clinical practice.  On June 16, 2000, plaintiff and OAG executed an addendum to plaintiff's employment agreement that required plaintiff to relinquish his clinical privileges and provided that if plaintiff agreed to never seek to be employed in a clinical capacity with OAG, then OAG would keep plaintiff employed and would explore administrative employment opportunities on behalf of plaintiff.

In June 2000, plaintiff sought consideration for the position of Physician Billing Compliance Officer with OAG.  Plaintiff was deemed unqualified for this position.

Plaintiff subsequently obtained credentials to work with a non-OAG practitioner in Edmonds, Washington.  Plaintiff began to work there in a clinical capacity in November, 2001.

Plaintiff was on a leave of absence with OAG from February 2000 until August 2002. On August 14, 2002, OAG terminated plaintiff after learning that he was practicing medicine in Washington.  The grounds for this termination include OAG's belief that plaintiff treated patients while under the influence of drugs, stole medications paid for by patients, committed fraudulent billing, lied about his drug usage on credentialing applications, and failed to obtain credentials in

any Oregon hospital during the almost thirty months that OAG kept plaintiff on a leave of absence.

Plaintiff contends that OAG (and co-defendant Legacy) violated the ADA and related Oregon employment statutes by subjecting plaintiff "to adverse actions because of an actual or perceived disability which did not prevent the performance of his job with reasonable accommodation."  First. Am. Comp. at Para. 28, 29.  As noted above, the claims against Legacy have been resolved in favor of Legacy.  The summary judgment motion brought by OAG seeks to dismiss the remaining claims in this action.  This motion is well-taken.

## I.    Summary judgment standards.

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  *MetroPCS, Inc. v. City and Co. of San Fran.*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted).  Where different ultimate inferences may be drawn, summary judgment is

inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The Ninth Circuit has reasoned that courts should require very little evidence to survive summary judgment in an employment discrimination case, because the ultimate question is one that is most appropriately conducted by the fact-finder, upon a full record. *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

**II.    Disability discrimination standards.**

The ADA prohibits discrimination by certain entities, including private employers, against qualified individuals with a disability and, in some cases, against persons perceived to be disabled. Specifically, it provides that no employer falling within the scope of the ADA "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12112(a); *see also* 42 U.S.C. § 12111(5) (defining employer).

The Ninth Circuit analyzes ADA cases using the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003).  As set out under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination.

To establish a *prima facie* case of discrimination in violation of the ADA by an employer, a plaintiff must prove: 1) that he or she is a qualified individual with a disability; 2) that he or she has suffered an adverse employment action; and 3) that a causal connection exists between the adverse employment action and the disability.  *See Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001).

The requisite degree of proof necessary to establish a *prima facie* case of discrimination on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

The ADA defines an individual with a disability as someone who: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of the impairment; or (3) is regarded as having an impairment.  42 U.S.C. § 12102(2)(A).

Once a *prima facie* case is presented by a plaintiff, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  The plaintiff is then afforded an opportunity to demonstrate that the employer's proffered

reason was pretextual, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Oregon's Discrimination Against Disabled Persons in Employment Act (the Oregon Act) is in part modeled after the ADA and contains language that is similar to the ADA. *Wheeler v. Marathon Printing, Inc.*, 974 P.2d 207, 213 n.6  (Or. App. 1998).

The Oregon Act provides that "O.R.S. 659A.112 to 659A.139 shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended." O.R.S. 659A.139.  Although Oregon courts analyzing claims under the Oregon Act have rejected the *McDonnell Douglas* burden-shifting approach, *see Callan v. Confed. of Or. School Admin.*, 717 P.2d 1252, 1254 (Or. App. 1986), that approach is nevertheless maintained for assessing Oregon employment discrimination claims brought in federal court. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1091-93 (9th Cir. 2001).  "The standard for establishing a *prima facie* case of discrimination under Oregon law is identical to that used in federal law." *Id*. at 1087.

### III.    Analysis of OAG's summary judgment motion.

As noted above, the ADA defines an individual with a disability as someone who has an impairment that substantially limits one or more of the individual's major life activities, or has a record of the impairment, or is regarded as having an impairment.  42 U.S.C. § 12102(2)(A).

A person with a medical condition, even one that affects his or her choice and range of activities, is not considered disabled under the ADA without a showing that the condition restricts a "major life activity." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184,

202 (2002); *see also* 42 U.S.C. § 12102(2)(A); O.R.S. 659.400(1) (a plaintiff must also demonstrate that her impairment *substantially limited* a major life activity). The primary argument advanced by OAG is that plaintiff has failed to present a *prima facie* case of discrimination in violation of the ADA or the Oregon Act by OAG because he cannot show that he is a qualified individual with a disability. Defendant OAG contends that plaintiff was not substantially limited in any major activity, and that OAG did not consider him to be so limited. This court agrees.

Moreover, even if plaintiff could establish that he should be construed as a qualified individual with a disability, OAG was under no obligation to further accommodate plaintiff. Specifically, OAG was not obliged to provide additional leave beyond the almost thirty months plaintiff received, or to transfer plaintiff to employment positions for which he was unqualified.

Finally, this court would also conclude in the alternative that even if plaintiff could meet his *prima facie* burden, OAG has presented uncontroverted evidence that plaintiff was terminated for legitimate non-discriminatory reasons. Accordingly, OAG is entitled to summary judgment as to plaintiff's remaining claims and this action must be dismissed with prejudice as to OAG.

### A.   Plaintiff fails to establish disability during ADA coverage.

This court concludes that plaintiff cannot show he is a qualified individual with a disability. The first question is whether plaintiff was eligible for ADA coverage, and if so, when. The Act specifically excludes persons engaged in current illegal drug use from its definition:

> For purposes of this title, the term "qualified individual with a disability" shall not include any employee or applicant who is

> currently engaging in the illegal use of drugs, when the covered
> entity acts on the basis of such use.

42 U.S.C. § 12114(a).

However, this exclusion does not extend to an individual (such as plaintiff) who has successfully completed, or is in the process of completing, "a supervised drug rehabilitation program and [who] is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use." 42 U.S.C. § 12114(b).

This court concludes that ADA coverage was not triggered automatically when plaintiff was released from his rehabilitation treatment. "Mere participation in a rehabilitation program is not enough to trigger the protections of § 12114(b)," because employers are also entitled to assurances that the employee is refraining from the continued illegal use of drugs and the impacts of that use. *See Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001) (citations omitted) (employee not entitled to the protections of the ADA's safe-harbor provision because she had not refrained from the use of drugs and alcohol for a sufficient length of time). In its motion, OAG proposes that a period of ninety days following release from treatment is adequate to present the assurance to which OAG was entitled. This court agrees that such a period following release from treatment is reasonable to assure that plaintiff's substance abuse was no longer a "real and ongoing problem." *Id*. (citation and quotations omitted). Accordingly, plaintiff's potential rights under the applicable disability statutes arose no earlier than August 26, 2000.

Next, plaintiff must establish that he suffered from an actual disability, or was regarded as such, from August 26, 2000 through his termination by OAG on August 14, 2002. This court addresses the question of whether plaintiff was actually disabled first.

PAGE 13 - OPINION AND ORDER

Plaintiff contends that his drug addiction should be construed as a disability *per se*. Some decisions could be interpreted as supporting this assertion. *See, e.g., Perritt v. Trane US, Inc.*, 2008 WL 440994, at *3 (W. D. Ark. February 13, 2008) (citation omitted) (it is well-established that substance abuse ((alcoholism)) meets the definition of a disability under the ADA); *see also Brown*, 246 F.3d at 1187 (citation omitted) (substance abuse ((alcoholism)) is a protected disability under the ADA).

The *Brown* court based this assumption on a footnote provided in a ruling in 1995 that commented that the ADA "protects an individual's status as an alcoholic. . . ." *Brown*, 246 F.3d at 1187 (citing *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 n.4 (9th Cir.1995)). However, despite including this footnote, the holding by the *Collings* court merely assumed, without deciding, that the plaintiffs in the case suffered from a drug addiction disability. *Id*. at 832.

This court is persuaded by more reasoned approaches taken in other decisions. The United States District Court for the District of Hawaii recently recognized that a drug addiction *that substantially limits one or more major life activities* is a recognized disability under the ADA. *Kula v. Malani*, 539 F. Supp.2d 1263, 1268 (D. Hi. 2008) (internal quotations and citations omitted). This approach is consistent with the Supreme Court's recognition that the ADA imposes a "statutory obligation to determine the existence of disabilities on a case-by-case basis." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999).

In light of this, a plaintiff suffering from a substance addiction may not be entitled to a finding that the addiction is a *per se* disability. *See Jeffrey O. v. City of Boca Raton*, 511 F. Supp. 2d 1328, 1333 -1334 (S. D. Fla. 2007) (footnote and citations omitted) (the ADA requires individualized inquiries, and simply being "a recovering substance abuser" is not a *per se*

disability; instead, the question presented is whether such plaintiffs have met their burden to demonstrate that their recovering status substantially limits one or more major life activities); *see also Roig v. Miami Federal Credit Union*, 353 F. Supp. 2d 1213, 1216 (S. D. Fla. 2005) (footnote omitted) (although "some courts have found that [substance abuse] can, in certain narrow cases, constitute a 'disability' under the ADA," a plaintiff must still "present sufficient evidence to pass an individualized assessment").

As reviewed above, establishing an ADA disability involves a three-step analysis: (1) a plaintiff must demonstrate that he or she is impaired; (2) a plaintiff must identify the life activity that is impaired and demonstrate that it is a "major life activity" under the ADA; and (3) a plaintiff must show that the impairment substantially limits that life activity. *Id*. (citing *Bragdon v. Abbott,* 524 U.S. 624, 631 (1998)). The "substantially limits" standard is severe and must include permanent or long-term restrictions on performance of the life activity. *Williams*, 534 U.S. at 198.

Plaintiff advances a theory that his addiction problems substantially limited him in the major life activities of work, interacting with others, and "accessing medical care." This court concludes that plaintiff has failed to present substantive evidence of permanent or long-term restrictions on his ability to work or to interact with others, and that his ability to "access medical care" falls short of being a major life activity.

### B.     Plaintiff is not substantially limited in working.

The applicable EEOC regulations specify that a person is substantially limited in the major life activity of working if he or she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average

person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). The

Supreme Court has held that to be substantially limited in the major life activity of working, "one

must be precluded from more than one type of job, a specialized job, or a particular job of

choice." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999). "If jobs utilizing an

individual's skills (but perhaps not his or her unique talents) are available, one is not precluded

from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is

not precluded from a broad range of jobs." *Id.*

     The Ninth Circuit requires that a plaintiff alleging substantial limitations in the major life

activity of working must present specific evidence about relevant labor markets and identify the

requirements posed by the class of jobs that were problematic because of the plaintiff's

limitations. *See Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1009 (9th Cir. 2007). This court

concludes that the record establishes that plaintiff was able to practice general medicine, or

perform work as a medical researcher, internist, surgeon, or medical administrator, despite his

addiction problems.

     As discussed more fully below, plaintiff has submitted a Declaration from vocational

expert Richard Ross, who opines that plaintiff's chemical dependency substantially limited him

in the major life activity of work. *See* Declaration of Richard Ross, Paras. 3,5, 6, 9 and 12. This

court concludes that these legal conclusions are improper in form and that OAG's motion to

strike them is well-taken. However, even if admissible, the conclusions from Ross are vague and

inadequately supported with specific, relevant statistical analysis. Plaintiff was capable of

emerging from his rehabilitation and finding employment in a host of available jobs. Relatedly,

plaintiff's assertion that he faced the substantial limitation of being permitted to work only two

days per week is rejected.  The evidence is at best equivocal as to whether plaintiff was actually

so limited, and if he was, such a limitation was temporary and directed to clinical work and

inapplicable to a broader range of available jobs.

### C.    Plaintiff is not substantially limited in interacting with others.

Interacting with others is a major life activity.  *See Head v. Glacier Northwest, Inc.*, 413

F.3d 1053, 1059 (9th Cir. 2005).  To demonstrate a substantial impairment in the ability to

interact with others, a plaintiff is required to show that his or her relations with others were beset

regularly with severe problems, such as consistently high levels of hostility, social withdrawal,

or communication failures.  *Id.* (quotations and citations omitted).  A plaintiff who alleges "that

he avoids crowds, stores, large family gatherings, and even doctor's appointments," and often

would not leave the house or answer the telephone, has alleged sufficient facts to show a

substantial limitation and avoid summary judgment.  *Id.*

Here, however, plaintiff relies upon the declaration of Daniel E. Wolf, D.O., which

describes plaintiff's behavioral patterns prior to his rehabilitation.  Additionally, plaintiff also

refers to his own declaration that his addictions caused marital problems, and that OAG officers

exhibited hostility toward him after his initiated this litigation.

These assertions fall far short of the kind of evidence the Ninth Circuit has recognized as

adequate for avoiding summary judgment regarding alleged limitations in interacting with

others.  *See Head*, 413 F.3d 1060-61; *see also McAlindin v. Co. of San Diego*, 192 F.3d 1226,

1235 (9th Cir. 1999) (citations and quotations omitted) (mere trouble getting along with co-

workers is insufficient to show a substantial limitation; the limitation must be severe or, in other

words, substantial when compared to the average person in the general population).  To survive

summary judgment, affidavits and declarations supporting the existence of a disability must be more than merely self-serving and must contain sufficient detail to convey the existence of an impairment.  *Head*, 413 F.3d at 1059.

### D.    "Accessing medical care" is not a major life activity.

Plaintiff asserts he is substantially limited in accessing medical care, because he refuses to accept any form of pain medication for fear of relapsing into substance abuse.  Plaintiff has failed to establish that choosing to refuse pain medication should qualify as a major life activity. A major life activity includes functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.  45 C.F.R. § 84.3(J)(2)(ii). At the very least, the activity at issue must be significant to everyday life, or "central to the life process itself."  *Bragdon*, 524 U.S. at 638.  Plaintiff's decisions about whether to subject himself to pain medications cannot be so construed.

Alternatively, even if plaintiff's inability to accept treatment for pain could be construed as a limitation on a major life activity, the sporadic and intermittent occurrences of this limitation cannot be viewed as a severe, permanent or long-term restriction.  *See Williams*, 534 U.S. at 198.

### E.    Plaintiff was not regarded as disabled.

Plaintiff's alternative argument that OAG regarded him as substantially limited in the major life activity of working is also rejected.   A summary of the "regarded as" ADA analysis is warranted.

"It offends the ADA as much for a person to be 'regarded as' having a disability, as actually to have one."  *E.E.O.C. v. United Parcel Serv., Inc.*, 306 F.3d 794, 803-04 (9th Cir.

2002).  The Supreme Court has recognized that a person may advance a "regarded as" disabled

claim, at least as such a claim pertains to limitations upon the major life activity of working.

*Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521-22 (1999); *see also Sutton*, 527 U.S. at

489:

> There are two apparent ways in which individuals may fall within
> this statutory definition: (1) a covered entity mistakenly believes
> that a person has a physical impairment that substantially limits
> one or more major life activities, or (2) a covered entity mistakenly
> believes that an actual, nonlimiting impairment substantially limits
> one or more major life activities.  In both cases, it is necessary that
> a covered entity entertain misperceptions about the individual – it
> must believe either that one has a substantially limiting impairment
> that one does not have or that one has a substantially limiting
> impairment when, in fact, the impairment is not so limiting.  These
> misperceptions often "resul[t] from stereotypic assumptions not
> truly indicative of . . . individual ability."  *See* 42 U.S.C. §
> 12101[(a)](7).

"As with real impairments, . . . a perceived impairment must be substantially limiting and

significant."  *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 541 (9th Cir. 1997) (citation

omitted).

Following *Sutton*, a plaintiff alleging a "regarded as" claim must provide evidence of the

employer's subjective belief that the plaintiff is substantially impaired.  *See, e.g., E.E.O.C.* , 306

F.3d at 805.  The Supreme Court has emphasized that a plaintiff must show that the employer

regarded the plaintiff as substantially limited in a major life activity and not just unable to meet a

particular job performance standard.  *Murphy*, 527 U.S. at 524.  An employee must show that the

employer regarded the employee as impaired and must also provide evidence that the imputed

impairment is objectively substantially limiting.  *See E.E.O.C.*, 306 F.3d at 801.

PAGE 19 - OPINION AND ORDER

Accordingly, an allegation that an employer regards an employee's impairment as precluding the employee from a single, particular position "is insufficient to support a claim that the employer regards the employee as having a substantially limiting impairment." *Walton*, 492 F.3d at 1009 (citing *Murphy*, 527 U.S. at 523). Instead:

> in order to state a "regarded as" claim a plaintiff must establish that the employer believes that the plaintiff has some impairment, and provide evidence that the employer subjectively believes that the plaintiff is substantially limited in a major life activity. If the plaintiff does not have direct evidence of the employer's subjective belief that the plaintiff is substantially limited in a major life activity, the plaintiff must further provide evidence that the impairment imputed to the plaintiff is, objectively, a substantially limiting impairment.

*Walton*, 492 F.3d at 1007.

In this case, OAG obtained information about plaintiff's work limitations from plaintiff's treatment providers. There is no evidence that OAG committed the errors that the Supreme Court in *Sutton* recognized as necessary to a "regarded as" claim. Specifically, plaintiff fails to show that OAG's knowledge of the opinions of his treatment providers induced either (1) a *mistaken* belief that plaintiff had a physical impairment that substantially limited him in working, or (2) a *mistaken* belief that an actual, nonlimiting impairment substantially limited plaintiff. *See Sutton*, 527 U.S. at 489. As explained above, the Court recognized that a "regarded as" claim requires a showing that the employer "entertain misperceptions about" the employee. *Id.*; *see also* 42 U.S.C. § 12102(2). The record of this case establishes that OAG was not mistaken about its understandings of plaintiff's substance abuse problems and the restrictions they imposed upon him.

PAGE 20 - OPINION AND ORDER

Plaintiff's reliance upon the addendum OAG and plaintiff executed in June 2000, under which plaintiff relinquished his clinical privileges with OAG, is also misplaced. That addendum arose out of negotiations between plaintiff and Ketchum, after plaintiff reflected upon the high mortality rates of anesthesiologists who suffer relapse and requested that his clinical contract with OAG be terminated.

Moreover, as explained herein, this court has ruled that plaintiff's potential rights under the applicable disability statutes arose no earlier than August 26, 2000. Plaintiff was not entitled to ADA protections until OAG was assured that plaintiff's substance abuse was no longer a real and ongoing problem.

This court has scrutinized the record and the remainder of plaintiff's arguments regarding possible positions with OAG for which plaintiff was not qualified and OAG's efforts to terminate plaintiff in 2001. In light of the specific standards articulated above, these arguments lack the requisite proof or evidence to sustain plaintiff's "regarded as" claim against OAG's summary judgment motion.

### F.    Plaintiff fails to establish that he was "qualified."

Even assuming without deciding that plaintiff could show that he should be viewed as disabled during the period of statutory coverage, he was never qualified to work because he lacked the proper credentials or privileges that are required to practice clinical medicine. Accordingly, plaintiff's contentions that OAG should have allowed him to work in a clinical capacity in a pain management position is specious. Plaintiff lacked credentials in any Oregon hospital and was unqualified to be assigned by OAG to any pain management position.

This court has already carefully considered plaintiff's allegations that OAG (and Legacy) should be blamed for his failures to obtain credentials.  *See* Opinion and Order of June 13, 2007 at 22-24.  As this court was compelled to conclude previously, the record establishes beyond any reasonable factual dispute that after initiating an application for privileges in June 2001, plaintiff never met or complied with the standard threshold requirements for such applications.  The responsibility for providing a complete application plainly rests with the applicant.  Plaintiff's efforts to evade the responsibility for completing his application, providing updated information, and ensuring that sufficient information was available to make a determination regarding his credentials application fail to create triable issues of fact that preclude judgment for OAG on the basis that plaintiff was not qualified as required under the applicable disability statutes.

### G.    Plaintiff was owed no duty to be accommodated as he requested.

Assuming without deciding that plaintiff could establish that he was a qualified individual with a disability for purposes of being entitled to protections under the applicable disability statutes, his contentions that OAG should have accommodated him with additional leave or by transferring him into other employment positions that he desired are without merit.  Because OAG was not required to engage in an interactive process with plaintiff, the analysis of why plaintiff's accommodation argument fails is brief.

Once an employer is aware of an employee's disability, the employer bears a mandatory obligation to engage in an interactive process with the employee.  *Humphrey v. Mem. Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001) (citation omitted).  This process should "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."  29 C.F.R. § 1630.2(o)(3).  The parties are obligated to

engage in a "good-faith exploration of possible accommodations between employers and individual employees." *Humphrey*, 239 F.3d at 1137-38 (citation omitted). Employers who do not engage in the interactive process in good faith may be liable statutorily, "if a reasonable accommodation would have been possible." *Id*.; *see also Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000) (if no reasonable accommodation was "the breakdown of the interactive process would be academic").

Besides failing to establish that he was a qualified individual with a disability, plaintiff makes an insufficient showing that a reasonable accommodation existed. Accordingly, plaintiff's allegations about OAG's efforts to engage in the interactive process are rendered moot. First, plaintiff's desire for additional leave was not reasonable. *See Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 (6th Cir. 2000) (footnote omitted) (a "review of case law in this and other circuits disclosed no cases where an employer was required to allow an employee to take a leave of absence for well in excess of a year-let alone indefinitely – as a reasonable accommodation to the employee's disability").

Second, plaintiff's desires to be selected for positions fail to establish that such an accommodation would have been reasonable. Plaintiff lacked the requisite qualifications or guidelines applicable to the respective positions.

### H.    Plaintiff was terminated for legitimate reasons.

Even if plaintiff could establish a *prima facie* case under the applicable disability statutes, which this court concludes he cannot, OAG is entitled to summary judgment on the alternative grounds that it had legitimate, nondiscriminatory reasons for the adverse employment action plaintiff experienced, and plaintiff cannot demonstrate that OAG's proffered reasons were

pretextual.  *See Burdine*, 450 U.S. at 256.  Some of the legitimate reasons for plaintiff's termination include OAG's concern that plaintiff stole medications meant for his patients, abandoned patients under his care while he administered drugs to himself, lacked proper credentials, obtained employment in Washington that called into question the scope of OAG's professional liability policy, and was untruthful when asked about his substance abuse problem.

To refute these reasons as pretextual, plaintiff must either raise an issue of fact as to whether these reasons are genuine, or must introduce direct evidence of a retaliatory motive. *Villiarimo v. Aloha Island Air, Inc.*, 281 F3d 1054, 1063 (9th Cir 2002).  Plaintiff has failed to do this.  Accordingly, even if plaintiff could present a *prima facie* case under the applicable disability statutes, OAG would nevertheless be entitled to summary judgment because of the unrefuted legitimate, nondiscriminatory reasons it had for terminating plaintiff.

For all of these foregoing reasons, this court is compelled to grant OAG's Motion for Summary Judgment [287] in its entirety.  The court turns now to OAG's Motion to Strike Portions of Declarations Submitted by Plaintiff; plaintiff's Motion to Strike Affidavits Filed With Reply Supporting Motion for Summary Judgment; and OAG's Motion to Strike the Affidavit of Stephen L. Brischetto.

## OAG's MOTION TO STRIKE PORTIONS OF DECLARATIONS [307]

This motion by OAG challenges several submissions made by plaintiff.  Specifically, OAG moves to strike statements contained in portions of the Declaration of Richard Ross (discussed in part above); the Declaration of John Olson, M.D.; the Declaration of David Naibert, M.D.; the Declaration of Carl Balog, M.D.; and the Declaration of Geoffrey Tyson. After examining the challenged statements, this court concludes that OAG would be entitled to

summary judgment even if these statements were admitted and considered.  Although this

conclusion suggests that the motion to strike could be construed as moot, the motion is largely

well-taken and granted in part.

### I.        Declaration of Richard Ross.

The statements by Richard Ross that OAG challenges have been addressed above.  In his

Declaration, Ross opines that plaintiff's chemical dependency substantially limited him in the

major life activity of work and that "OAG's perception" that plaintiff was precluded from

returning to clinical practice substantially limited his ability to be employed in certain

occupations.  *See* Declaration of Richard Ross, Paras. 3,5, 6, 9 and 12.  This court concludes that

despite testifying as a vocational expert, the legal conclusions by Ross are improper in form and

that OAG's motion to strike them is well-taken.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Rulings on the admissibility of expert testimony under Rule 702 are committed to the

sound discretion of the trial court.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).  More

specifically, the Supreme Court has imposed a gatekeeping obligation on trial judges to engage

in objective screening designed to ensure that scientific evidence that is put before the jury "is

not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993);

*see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 150-51 (1999) (emphasizing that trial

judges are entitled to broad discretion when discharging their gatekeeping function); *United States. v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (the Supreme Court made clear that the district court's duty to act as gatekeeper and to assure the reliability of proffered expert testimony before admitting it applies to all (not just scientific) expert testimony).

One of the threshold questions for admissibility of expert testimony is whether the proffered testimony will assist the trier of fact. *Daubert*, 509 U.S. at 592.  An expert's "bald assurance of validity is not enough." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ( *Daubert II*).  Moreover, generally, "[c]onclusory allegations . . . , without factual support, are insufficient to defeat summary judgment." *Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997) (citation omitted).

As noted above, even if the legal conclusions from Ross were deemed admissible, they were vague and inadequately supported with specific, relevant statistical analysis.  As such, the statements fall short of defeating OAG's summary judgment motion.  Plaintiff was capable of emerging from his rehabilitation and finding employment in a host of available jobs.

## II.      Declaration of John Olson, M.D.

Next, OAG raises a similar challenge and asks the court to strike the legal conclusions contained in paragraphs 10 and 11 of the Declaration of John Olson, M.D. because these paragraphs contain improper legal conclusions.  Doctor Olson opined that plaintiff "was qualified to perform the essential functions of positions requiring basic pain management services in June 2001 and was qualified to perform the essential functions of positions requiring advanced interventional pain management procedures by the Spring of2002."  Olson Decl., Para. 10.  Doctor Olson also expressed the opinion about what accommodations in the workplace were

necessary for plaintiff to work in pain management, and that they were not an "undue hardship." *Id*. at Para. 11.

These legal conclusions proffered by Dr. Olson were improper.  Nevertheless, his views on the merits of plaintiff's disability claims against OAG, even if admissible, fail to preclude summary judgment for OAG.

### III.      Declaration of David Naibert, M.D.

Next, OAG moves to strike a sentence of Dr. Naibert's declaration in which the doctor opines that plaintiff was one of the most skilled pain management physicians in Washington. Declaration of Dr. Naibert, M.D. at Para. 5.  To the extent that this statement may be beyond Dr. Naibert's personal knowledge, the court concludes that any error is harmless.  Notwithstanding Dr. Naibert's regard for plaintiff's skills, OAG is entitled to summary judgment on plaintiff's claims for the reasons provided above.

### IV.      Declaration of Carl Balog, M.D.

Next OAG challenges two statements presented in the declaration of Dr. Carl Balog that purport to repeat what OAG Chief Executive Officer Joy Ketchum may have said.  Because the admissibility of this alleged hearsay would fail to affect the merits of OAG's summary judgment motion, this aspect of the motion to strike is denied as moot.

### V.      Declaration of Geoffrey Tyson.

The final portion of OAG's motion to strike challenges legal conclusions proffered by plaintiff in his declaration.  Although a plaintiff's testimony may at times "suffice to establish a genuine issue of material fact," this possibility "in no way impugns our longstanding precedent that conclusory declarations are insufficient to raise a question of material fact." *Head*, 413 F.3d

at 1059.  To the extent that plaintiff asserts impermissible legal conclusions and speculation in

paragraphs 42, 52, 53, 56, 57, and 58 of his declaration, OAG's challenges are well-taken.

However, this court considered plaintiff's assertions in these paragraphs and nevertheless

concluded that despite plaintiff's beliefs and conclusions, OAG was entitled to summary

judgment.  Accordingly, OAG's motion is granted as to plaintiff's conclusions and speculative

statements as identified in this motion, but even if these statements were admitted OAG would

be entitled to summary judgment for the reasons provided above.

**PLAINTIFF'S MOTION TO STRIKE AFFIDAVITS FILED WITH REPLY**

**SUPPORTING MOTION FOR SUMMARY JUDGMENT** [313]

Plaintiff moves to strike the Affidavit of Joy Ketchum and the Declaration of Román D.

Hernández, and the exhibits attached to both, which OAG filed in support of its Reply brief.

Plaintiff sought a court order either striking  these filings or granting leave to plaintiff to file

supplemental briefing in response to them.

There is no dispute that a party may not file "new" evidence with a reply and then deprive

the opposing party of an opportunity to respond to the new evidence.  *See Provenz v. Miller*, 102

F.3d 1478, 1483 (9th Cir. 1996).  This court has examined the Ketchum Affidavit and the

Hernández Declaration, and the exhibits attached to both, and concludes that these filings do not

constitute new evidence.  Instead, they rebut arguments asserted by plaintiff – including

assertions first raised by plaintiff in his opposition to OAG's summary judgment motion.

Nevertheless, the court has re-examined the merits of OAG's dispositive motion without

benefit of the challenged submissions.  Because OAG would be entitled to summary judgment

regardless of these submissions, the court declines to undertake further scrutiny of their

propriety.  The submissions were proper, do not constitute "new" evidence, and plaintiff is not entitled to leave for further supplemental briefing.  Accordingly, plaintiff's motion to strike is denied.


**OAG'S MOTION TO STRIKE THE AFFIDAVIT OF STEPHEN L. BRISCHETTO [320]**

Finally, OAG moves to strike the Affidavit of Stephen L. Brischetto that was filed in support of plaintiff's Motion to Strike or in the Alternative to Permit Supplemental Filing. Because the court ascertained that plaintiff's underlying motion to strike lacked merit even after considering the challenged affidavit, this motion is denied as moot.  This ruling offers no evaluation of the merits of OAG's claims that the affidavit was filed untimely or without proper conferral with opposing counsel as mandated by this court's Local Rules.

**CONCLUSION**

For the reasons provided herein, Legacy's Motion for Summary Judgment on Their Counterclaims [270] and OAG's Motion for Summary Judgment [287] are granted.  OAG's Motion to Strike Portions of Declarations Submitted by Plaintiff [307] is granted in part. Plaintiff's Motion to Strike Affidavits Filed With Reply [313] is denied.  OAG's Motion to Strike the Affidavit of Stephen L. Brischetto [320] is denied as moot.

Legacy shall file a Cost Bill and a petition for attorney fees no later than thirty days from the date of this Opinion and Order.  Plaintiff shall file any objections  no later than twenty-one days after the Cost Bill and fee petition are docketed.  Legacy may file a Reply brief in support of its Cost Bill and fee petition within fourteen days of the filing of plaintiff's Objections.  The court will determine the extent of Legacy's award without further briefing or oral argument.

IT IS SO ORDERED.

Dated this __6__ day of June, 2008.

/s/ ANCER L. HAGGERTY
ANCER L. HAGGERTY
United States District Judge